1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **DISTRICT OF NEVADA**

9

10 UNITED STATES OF AMERICA,

11   Plaintiff,                                    Case No. 2:06-cr-00379-LDG (GWF)

12 v.                                                **ORDER**

13 ROBERT MYRON LATHAM,

14   Defendant.

15

16   The defendant, Robert Myron Latham, petitions to vacate, set aside, or correct his

17 sentence pursuant to 28 U.S.C. §2255 (#193).  The United States opposes the motion

18 (#199).  Latham has filed a reply (#201).

19   Under 28 U.S.C. § 2255, a federal prisoner can move to vacate a sentence on the

20 ground that it "was imposed in violation of the Constitution or laws of the United States."

21 However, motions under 28 U.S.C. § 2255 "must be based on an independent

22 constitutional violation" and "may not be used as a chance at a second appeal." *United*

23 *States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010).  Accordingly, claims brought under

24 Section 2255 are procedurally defaulted and barred if the defendant fails to raise them

25 either at trial or on direct appeal, and fails to show cause and prejudice excusing the

26 default. *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (*citing Bousley v.*

*United States*, 523 U.S. 614, 622 (1998); *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003) ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error.") (internal citation omitted); *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996) ("Because McMullen failed to raise any objection regarding the type of methamphetamine, either at sentencing or on direct appeal, he is barred from raising this issue in a § 2255 motion.").

A criminal defendant is entitled to reasonably effective assistance of counsel. *McMann v. Richardson*, 377 U.S. 759, 771, n. 14 (1970). The right to effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). When a true adversarial criminal trial has been conducted, even if defense counsel has made demonstrable errors, the requirements of the sixth amendment have been met. *United States v. Cronic*, 466 U.S. 648, 656 (1984). Counsel is presumed competent. As such, the burden rests on the defendant to establish a constitutional violation. *Cronic* at 658.

To obtain reversal of a conviction, petitioner must prove (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense to such a degree as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687-88, 692 (1984). To establish deficient performance under *Strickland*, it must be shown "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Id*. at 687. Exercising highly deferential judicial scrutiny, *Id*. at 699, this court inquires "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. "Such assessment must be made 'from counsel's perspective at the time,' so as 'to eliminate the distorting effects of hindsight.'"

1    *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 689).

2    Prejudice can be presumed only "where there has been an actual breakdown in the

3    adversarial process at trial." *Toomey v. Bunnell*, 898 F.2d 741, 744 n. 2 (9th Cir.), *cert.*

4    *denied*, 111 S.Ct. 390 (1990); *See also Cronic*, *supra*.

5         As cause excusing his several procedural defaults, Latham argues that his counsel's

6    failure to raise certain claims on direct appeal constitutes ineffective assistance of appellate

7    counsel. Ineffective assistance of appellate counsel, if proved, constitutes cause for

8    procedural default. *Murray v. Carrier*, 477 U.S. 478, 489 (1986).

9         To demonstrate ineffective assistance for failure to raise issues on appeal, the

10   petitioner must satisfy the two-prong test of *Strickland.* Latham must overcome the strong

11   presumption that, under the circumstances, his attorney's challenged conduct falls within

12   the wide range of reasonable professional assistance and that it might be considered

13   sound strategy. *Strickland*, 466 U.S. at 689. Objective reasonableness does not require

14   counsel to raise every conceivable argument supported by the record. *See Jones v.*

15   *Barnes*, 463 U.S. 745, 751 (1983). A tactical decision by counsel with which a defendant

16   disagrees cannot form the basis of a claim of ineffective assistance of counsel. *Guam v.*

17   *Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984). "[T]he mere fact that counsel failed to

18   recognize the factual or legal basis for a claim, or failed to raise the claim despite

19   recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at

20   487. Thus, to maintain his claim of ineffective assistance of appellate counsel, Latham

21   must identify specific acts or omissions that fall outside the wide range of professionally

22   competent assistance.

23        Here, the performance of Latham's counsel was not deficient. His decision to raise

24   some issues on direct appeal and not others was a tactical decision that falls within

25   counsel's authority. Latham has not shown that the failure to raise certain claims fell

26   outside of the wide range of professionally competent assistance. Further, because

1  Latham has failed to show ineffective assistance of appellate counsel, this court is barred

2  from reviewing all claims that he has procedurally defaulted.

3      Background

4      In the first two counts of the superceding indictment against Latham, the

5  government charged that on or about Feb. 25, 2005, Latham knowingly published notice of

6  child pornography for distribution, and knowingly distributed child pornography.  In the third

7  count, the government charged that from an unknown time until on or about June 1, 2005,

8  Latham had knowingly received child pornography.

9      The government conducted a search of the residence of Latham's brother,

10  Lawrence, on June 1, 2005.  Shortly after, Adam Chu conducted or attempted to conduct a

11  forensic examination of the three computers seized from the residence.[1]  Images of child

12  pornography were stored on Latham's laptop computer.

13      Latham was indicted in November 2006.

14      Latham's trial commenced Sept. 8, 2008.  In its case in chief, the government

15  presented evidence that the defendant stored images of child pornography on his

16  computer, and named the files to indicate that the files contained images of child

17  pornography.  The government further established that the defendant ran a program on his

18  computer, Limewire.  As such, when the computer was connected to the internet, other

19  persons could view the names of the files of child pornography stored on a shared folder

20  and could download the child pornography.  On February 25, 2005, the computer was

21  connected to the internet at the residence of Latham's brother in Las Vegas, and an FBI

22  agent was able to view the names of files stored on Latham's computer in the shared

23  folder, which names indicated the files were images of child pornography.  The FBI agent

24  then downloaded several of the files, which contained images of child pornography.  In

25  _____

26      [1]     At trial, Chu testified that the hard drive of one desktop computer could not be
    imaged.

presenting its case, the government called Adam Chu as a witness, and offered him as an expert in the area of forensic computer examinations.

On Sept. 10, 2008, following the government's case in chief, Latham testified: "To the best of my knowledge I was out of Las Vegas from about February 18th until about March 8th of 2005." He further testified that, during this time, he was in Liberal, Kansas, visiting Donna Schott, a person he met on the internet in 1999.

Prior to trial, the defendant did not provide the government with a Rule 12.1 notice of his intended alibi defense. Following Latham's direct testimony, Latham's counsel represented to the Court that he did not know that Latham would testify about the alibi defense until that day, as the defendant had not recognized the importance of the February 25th date until a discussion between Latham and his counsel the prior evening, and had not made the decision to testify regarding this until that morning.

On cross-examination, Latham testified that it was a two-day trip, that he left Las Vegas on about the 18th, slept in his truck in a TA parking lot in Denver, and arrived in Liberal on Sunday the 20th. He left Liberal on March 6th, and slept in his truck at a rest stop somewhere near Grand Junction. Latham further testified that he lacked any receipts of the trip. He further indicated he did not use a credit card during the trip, instead paying with about $1,500 cash he and his brother had on hand prior to his departure from Las Vegas. In Liberal, Latham stayed with Schott and her husband, Alan. Following his own testimony, Latham rested his defense case.

On the afternoon of Sept. 10th, (after Latham's trial had recessed for the day in Las Vegas) detectives with the Liberal, Kansas, police department conducted an interview of Schott as a courtesy to an FBI agent. In the interview, Schott states that she met Latham online in 1997, that he visited her on vacation from Feb. 20th through March 6th, but that only she and Latham stayed in her house, as she was separated from her husband. Schott explained, to the detectives, that Latham's problems started with his visit to his brother in

1  Las Vegas, and that while Latham was gone, someone had downloaded child pornography

2  onto his computer.  Finally, Schott revealed that Latham's attorney had spoken to her

3  numerous times (though she couldn't recollect when he started communicating with her),

4  that she used the attorney to relay messages to Latham, that she had corresponded with

5  Latham, but that he had only been able to call her once, on the weekend of August 30,

6  2008.

7         While the report of the interview with Schott states that the interview was conducted

8  shortly after 4 p.m. in Liberal, Kansas, on Sept. 10th, 2008, the report provides no indication

9  as to when the interviewing detective wrote the report.  On December 17, 2008, just prior to

10 Latham's originally scheduled sentencing hearing, Latham's counsel provided a copy of the

11 report to the government and to the Court, which copy had a fax date of November 18,

12 2008.

13        The Alibi Witness

14        Latham raises two separate grounds for relief concerning the alibi witness, Donna

15 Schott.  First, he argues that the government violated the principles of *Brady v. Maryland*,

16 373 U.S. 83, 83 S.Ct. 1194 (1963) by failing to turn over the investigative report detailing

17 the interview of Schott until after the trial.  Second, he argues that his counsel was

18 ineffective for failing to call Schott as an alibi witness.  Neither ground merits relief.

19        As Latham had not provided notice of his alibi defense, the government lacked any

20 knowledge of Schott until Latham disclosed her identity in his own trial testimony.  Lacking

21 any knowledge of Schott's relationship with Latham, the government could not have

22 disclosed to Latham any report indicating that Schott possessed evidence relevant to

23 Latham's charged offenses.  The government requested the local police department in

24 Liberal, Kansas, to interview Schott shortly after learning her identity.  The Liberal

25 detectives conducted that interview promptly.  Nevertheless, Latham had rested his

26 defense before the Liberal detectives had contacted and interviewed Schott.  The

6

government did not violate *Brady* by failing to turn over a report of an interview that, due to Latham's conduct, was not even conducted until after he had rested his defense. Further, Latham has not identified any evidence possessed by Schott, revealed in the report of her interview, of which he was not aware when he disclosed her identity during his trial testimony.

Latham also argues that his trial counsel was ineffective because he "should have known" of Latham's alibi because (a) prior counsel had filed a motion to subpoena the alibi witness, Schott, and (b) Latham "would tell him."[2] Again, this ground does not merit any relief. Contrary to Latham's assertion, his prior counsel never moved to subpoena Schott. Further, the only evidence in the record as to when any of Latham's counsel became aware of Latham's assertion that he was not in Las Vegas on February 25, 2005, is the representation by trial counsel, during trial (and immediately after Latham first testified of his alibi), in Latham's presence, that Latham first recognized and discussed the importance of the February 25, 2005, date with trial counsel on September 9, 2008.

Further, even to the extent Latham is now contradicting the in-court representations of his trial counsel, and is asserting that he informed his trial counsel of his alibi prior to trial, and informed his counsel that Schott was a witness to that alibi, the Court cannot conclude that his counsel was ineffective for failing to call Schott as a witness. Schott was not the only witness as to whether Latham was not in Las Vegas on February 25, 2005. Trial counsel called Lawrence Latham as a witness. Lawrence testified that he and his wife, Sherryl, were living at his residence on February 25, 2005. Lawrence was not sure if

_____

[2] Latham's petition is ambiguous, as he alleges that he "would tell" his counsel of his alibi. It is unclear from the context of the petition whether the allegation is that Latham did tell his counsel prior to trial, or that Latham would tell him of his alibi at trial (as his counsel represented), or whether Latham does not recall actually telling his counsel, but now believes that he would have told him. The Court has construed the ambiguous allegation favorably to Latham, as an allegation that prior to trial Latham informed his counsel of his alibi and that Schott was an alibi witness.

1  Latham was there on that date, as Latham "was there and then gone and there and gone"

2  from January through May 2005.  Trial counsel called Sherryl as a witness, but did not

3  question her as to whether Latham was not in Las Vegas on February 25, 2005.  Trial

4  counsel never questioned Sherryl whether Latham ever left Las Vegas in early 2005.

5  Latham does not assert or argue that either Lawrence or Sherryl could provide any

6  evidence corroborating his alibi.

7       Latham's testimony regarding his trip to Liberal served only to firmly convince the

8  Court that it was false.  The Court personally witnessed the demeanor of Latham during his

9  trial testimony.  In his direct testimony, Latham testified only that he was out of Las Vegas

10  from about February 18th until about March 8th of 2005, but was instead in Liberal, Kansas,

11  visiting Donna Schott, a friend he met on the internet in New Hampshire, who had moved

12  to Kansas, with whom he had communicated since 1999, and that he decided to take a trip

13  before finding work "being this close to Kansas."  Despite the significance of the trip as an

14  alibi, counsel did not ask Latham to testify as to any details of the trip.  Neither did counsel

15  ask Latham how, despite the lapse of 3½ years, he was able to recall the specific dates of

16  the trip.

17       In his cross-examination, Latham testified he left Las Vegas on about February 18th,

18  arrived in Liberal on the 20th, and did not leave Liberal until March 6th, returning to Las

19  Vegas on about the 8th.  Latham admitted the lack of any physical evidence of the trip, such

20  as receipts.  He further asserted that he did not use any credit cards on the trip, but had

21  paid for the trip with about $1500 cash, which cash he had not withdrawn from a bank, but

22  which he had on hand or had received from his brother.  In Liberal, Latham stayed at

23  Schott's house with Schott and her husband Allen.  While in liberal, he went out to eat

24  (though only with Schott) and watched a lot of videos.  He further asserted that in his travel

25  to and from Liberal in February and March, he slept in his truck at a TA parking lot in

26  Denver on the way to Liberal, and a rest stop near Grand Junction on the return trip.  The

8

testimony firmly convinced the Court that Latham perjured himself, a finding stated by the Court in sentencing Latham.

The report of the Schott interview establishes that her testimony would have served only to damage, rather than bolster, Latham's already-unbelievable alibi defense. Schott would not have merely confirmed that Latham visited her in late February 2005, but she would have testified that Latham visited from February 20th to March 6th; the same specific dates to which Latham testified. As to a more memorable fact regarding Latham's visit, however, Schott would have contradicted him. She would have testified that only she and Latham stayed at her house during his visit. At that time, she and her husband were separated. That Latham and Schott would have testified to the exact same start and end dates of his alleged visit, but would have disagreed as to whether her husband resided in her house during the visit, would have served only to further discredit Latham's unconvincing alibi. Under these circumstances, assuming that Latham had informed his counsel of his alibi as he may now be claiming in his §2255 petition, and assuming (as Latham may be suggesting) that counsel for Latham made a decision to not call Schott as an alibi witness, such a decision did not amount to ineffective assistance of counsel.

Finally, as pointed out by the government in its response, defendant's commission of the crimes charged in Counts 1 and 2 did not depend upon his sitting at his computer in Las Vegas, Nevada, on February 25, 2005. Rather, the counts charged that on or about February 25, 2005, the defendant knowingly advertised that he had child pornography available for distribution, and that he knowingly distributed the child pornography. As established at the trial, the defendant accomplished the elements of these offenses by having his computer run a software application known as Limewire in such a manner that, when the computer was connected to the internet, other persons could view the names of files stored in a designated share folder on Latham's laptop computer, and to download files from that folder. The government further established that, in the designated share

folder, Latham stored files of images of child pornography, the names of which files published a notice that the files contained images of child pornography. The government further showed that Latham had connected his computer to the internet such that, on February 25, 2005, it was running Limewire, publishing notice of the images of child pornography on the designated share folder, and then distributing several of those images to the investigating FBI agent. In short, the evidence established that Latham set-up and operated his computer in Las Vegas in such a way that, even if he left on February 18, 2005, for a vacation in Liberal, Kansas, his computer continued operating in the manner Latham intended so that, on February 25, 2005, he accomplished his intent of publishing notice of and distributing child pornography. Accordingly, for all these reasons, the Court finds that Latham's trial counsel was not ineffective for failing to call Donna Schott as an alibi witness.

The Expert Witness

Latham raises three grounds of relief in connection with Adam Chu, whom the government offered as an expert in the area of forensic computer examinations. First, Latham argues that Chu, who testified at trial that he was a certified forensic computer examiner, misled the jury as to his expertise when he examined Latham's computer because, at the time of the examination, Chu was a forensic examiner trainee. Second, Latham argues that Chu's examination of Latham's computer was illegal because Chu was a trainee but admitted he was unsupervised. Third, Latham argues his counsel was ineffective for failing to question Chu whether, when he examined Latham's computer, he was a trainee and was unsupervised. None of these grounds warrant relief.

Latham's argument that Chu misled the jury as to his expertise when he examined Latham's computer is without merit. Chu testified that he began working for the FBI as a computer forensic examiner about 3½ years prior to the trial, that before a computer forensic examiner is certified they are trainees, that a trainee typically performs 5 to 10

10

examinations that are supervised by a trainer, that he had performed about 20 examinations that were supervised before becoming certified, that he had completed all classroom and outside curriculum and had become certified, that he continued in his training as required to maintain his certification, and that he had performed approximately 200 examinations.  Chu never testified, implied, or suggested that he was a certified computer forensic examiner when he examined Latham's computer.  Latham does not point to any testimony by Chu that would suggest or imply that, when Chu examined his computer, Chu was a certified computer forensic examiner.  Further, Chu's accurate testimony to his level of expertise in September, 2008, and his accurate testimony as to the training and experience he had obtained in the 3½ years since he began working for the FBI, which expertise and training qualified him to testify at Latham's trial as an expert, does not amount to misleading testimony about Chu's expertise when he conducted the forensic examination of Latham's computer 3¼ years prior to trial.

Latham's argument that Chu's examination of his computer was illegal because Chu admitted that he was unsupervised fails because it relies upon a misstatement of Chu's testimony.  Chu testified, in cross-examination, that he was not assisted in conducting the examination.  Chu did not testify that he was not supervised in conducting the examination. Chu did testify, however, that prior to being certified, trainees are supervised by a trainer in each of their computer forensic examinations, and that he was supervised in about 20 such examinations.

Finally, Latham's argument that his counsel was ineffective for failing to impeach Chu is without merit.  Latham is correct that his trial counsel did not specifically ask Chu whether he was supervised when he examined Latham's computer.  The evidence in the record, however, is that Chu testified on direct examination that he performed about 20 computer forensic examinations under supervision.  Latham's argument rests upon mere speculation that he was not supervised in examining Latham's computer because he was

11

1  not assisted in the examination.  Latham is also correct that his trial counsel did not

2  specifically question Chu, and have Chu expressly admit, that he was a trainee at the time

3  he examined Latham's computer.  However, Chu did testify (on September 9, 2008), that

4  he had been employed by the FBI for 3½ years, and further testified that he examined

5  Latham's computer in June 2005.  Chu did not mislead the jury regarding his expertise and,

6  as such, could not have been impeached.  The failure of trial counsel to ask a question to

7  further emphasize that Chu had just begun working for the FBI when he conducted the

8  examination, and was a trainee, was not ineffective and did not prejudice Latham.

9         Denial of Counsel

10        Latham makes a convoluted argument that because he was not indicted until

11  November 2006 (although his computer was seized in June 2005, and examined in June

12  2005), he was denied counsel prior to July 2006, and thus denied the opportunity to have

13  his counsel investigate his laptop computer without the limitations of the Adam Walsh Bill.

14  Latham further contends that, prior to the Adam Walsh Bill, his counsel would have taken

15  custody of the laptop computer and thus examined the computer itself, rather than just an

16  image copy of the hard drive that Chu created in his forensic examination.  He further

17  asserts that this limited examination of the image copy of the hard drive made it impossible

18  for his expert to determine if Chu had tainted the "evidence of the computer."

19        As noted previously, Latham procedurally defaulted on this claim, and he has not

20  shown cause to excuse the default.  Further, Latham's argument rests on nothing more

21  than speculation that an investigation of his computer prior to July 2006 would have

22  produced a different result than the post-July 2006 investigation of the computer.  Latham

23  was not denied counsel as a result of being indicted in November 2006.

24        Failure to Investigate Computer Findings

25        Latham argues his counsel was ineffective for failing to have an expert properly

26  investigate the findings of Chu.  Latham's argument fails because, contrary to his assertion,

his defense forensic computer expert testified that he did review Chu's report, and did examine Latham's computer at the FBI facility, and did so several times. Further, the argument fails because it rests upon nothing more than speculation as to possible exculpatory evidence that might have been obtained if counsel had an expert "properly investigate the computers." Latham offers no suggestion as to how his expert's investigation of the laptop computer was less than a "proper investigation." That the expert's investigation did not reveal exculpatory evidence that Latham now speculates might have existed does not establish that the investigation was less than proper. Rather, the lack of the speculated exculpatory evidence establishes only that the laptop lacked such exculpatory evidence. Accordingly, trial counsel was not ineffective, as counsel had an expert investigate the government's evidence.

Therefore, for good cause shown,

THE COURT **ORDERS** that Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (#193) is DENIED.

DATED this 29 day of December, 2011.

Lloyd D. George
United States District Judge

13